Filed 5/6/22  Fraley v. Ford Serviss LLP CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FRANKLIN R. FRALEY, JR.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FORD SERVISS LLP, et al.,<br><br>Defendants and Respondents. | B309029 c/w B310525<br>(Los Angeles County<br>Super. Ct. No.<br>20STCV02956) |

APPEALS from an order and judgement of the Superior Court of the County of Los Angeles, Laura A. Seigle, Judge. Reversed, in part, and remanded with instructions.

The David Firm, Henry S. David and Hayim M. Gamzo, for Plaintiff and Appellant.

Kaufman Dolowich & Voluck, Andrew J. Waxler and Jordan G. Cohen, for Defendants and Respondents.

Beitchman & Zekian, David P. Beitchman and Andre Boniadi, for Defendants and Respondents.

# I. INTRODUCTION

Plaintiff Franklin Fraley, Jr. (Fraley) sued the attorney defendants[1] for impairing his attorney lien against settlement proceeds. The trial court granted defendants' anti-SLAPP motion,[2] struck the entire complaint, and awarded defendants attorney fees and costs. On appeal, Fraley contends that defendants failed to satisfy their burden to show that all of the alleged wrongful conduct underlying the complaint was protected activity and that, in any event, he showed the requisite probability that he would prevail on his claims. We reverse, in part, and remand with instructions.

# II. FACTUAL BACKGROUND

A.   *Kessler's Retention of Fraley*

In February 2007, Fraley (dba Fraley & Associates) entered into a retainer agreement with Drita Kessler and her company, DK Art Publishing, Inc. (collectively Kessler), pursuant to which Fraley agreed to provide Kessler legal services on various

---

[1]   The defendants are three law firms—Ford Serviss, LLP, Collins Ford, LP, and Beitchman & Zekian—and four individual attorneys—William H. Ford III, Claudia J. Serviss, Michael D. Collins, and David P. Beitchman.

[2]   The term "SLAPP" is an acronym for strategic lawsuit against public participation. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 40.) Defendants filed their motion under Code of Civil Procedure section 425.16 (section 425.16), commonly known as the anti-SLAPP statute.

matters.  The agreement provided that Fraley's services would be billed on an hourly basis and that Kessler would be invoiced monthly.  The agreement included an arbitration clause applicable to any and all disputes between the parties arising under the agreement and a prevailing-party attorney fees provision.

According to Fraley, soon after he began representing Kessler, she advised that she could not pay his monthly invoices when due.  The parties therefore agreed that she would pay the overdue invoices from the proceeds she received on then-pending matters.  As a result, Fraley represented Kessler for years without receiving any compensation from her.

B.    *The City Art Action*[3]

In May 2007, Fraley filed an action for Kessler against City Art, Inc. and others (collectively City Art) seeking damages and other relief "for conversion of [DK Art Publishing, Inc.'s] art." After litigating that action for nearly seven years, Fraley obtained a judgment in favor of Kessler entitling her to more than $8 million in damages for lost or stolen art and repossession of approximately $5 million in consigned art.

C.    *Coverage Action and Assignment of Rights*

City Art tendered the defense of the City Art action to Travelers Property and Casualty Company of America and Fidelity Guarantee Insurance Underwriters, Inc. (collectively

---

[3]    *DK Art Publishing, Inc., et al. v. City Art, Inc., et al.*  (LASC case number BC370549).

3

Travelers) both of which initially denied coverage, but later agreed to defend the action under a reservation of rights. City Art then sued Travelers seeking a declaration of rights regarding Travelers' defense and indemnity obligations and damages for insurance bad faith (coverage action).[4]

Following entry of the judgment in the City Art action, Kessler and City Art entered into an agreement not to execute on the judgment in exchange for an assignment of City Art's rights against Travelers in the coverage action. Following the assignment of rights, Kessler retained defendants to represent her in the coverage action.

D.   *Coverage Action Lien and Termination*

On October 29, 2013, Fraley filed a notice of attorney lien in the coverage action. The notice described Fraley's rights under the retainer agreement to be paid all proceeds due to Kessler from matters on which he represented her[5] and his lien rights with respect to all such proceeds. A dispute then arose between Fraley and Kessler over the amount of attorney fees due and Fraley's lien rights to the proceeds from the City Art, coverage, and malpractice actions. In the fourth quarter of 2014, Kessler

[4]   *City Art, Inc., et al. v. Travelers Property and Casualty Co. of America, et al.* (LASC case number BC445179).

[5]   In addition to representing Kessler in the City Art action, Fraley also filed a notice of judgment lien on Kessler's behalf in a legal malpractice action filed by City Arts against its former attorney (malpractice action), entitled *City Art, Inc. et al. v. Azadegan et al.* (LASC case number BC476405).

4

terminated Fraley's services in relation to all matters on which he represented her under the retainer agreement.

In late 2014, Fraley notified defendants that the total amount of his lien was $1,870,281.07 in principal and $1,391,097.41 in interest.

E.    *Settlement of the Coverage Action*

In January 2015, Kessler agreed to settle the coverage action with Travelers.  In exchange for a release of all claims against Travelers and a dismissal of the coverage action, Travelers agreed to pay Kessler $6,460,000.  The agreement provided that Travelers would make payment of the settlement amount as follows:  (1) $5,160,000 would be paid to defendant "Ford & Serviss LLP;" (2) $1.3 million would be deposited in an escrow account designated by Kessler; and (3) $500,000 would be deposited by Kessler in the same escrow account from the anticipated settlement of the malpractice action.  The agreement further provided that the "first moneys" from the escrow account would be used to satisfy Fraley's lien, the amount and validity of which remained undetermined.  Any funds left over after the extinguishment of Fraley's lien were to be paid to Kessler. Kessler agreed to be responsible for the amount of the Fraley lien and to hold Travelers harmless from any obligations arising from the lien.

In February 2015, pursuant to the terms of the coverage action settlement, defendants received a total of $5,160,000 from Travelers.  From that amount, they paid themselves $1,660,000. In mid-March 2015, Fraley learned that the coverage action had been dismissed and suspected that it had settled.  Approximately

5

one month later, on April 15, 2015, defendants disbursed the remaining $3,469,214.50 to Kessler. Defendants did not, however, notify Fraley that the coverage action had settled or that any money had been disbursed.

F.     *Collection Action Against Kessler*

In April 2016, Fraley initiated an arbitration proceeding against Kessler to recover amounts due under the retainer agreement. On September 6, 2017, the arbitrator issued an interim award in favor of Fraley for unpaid legal fees and costs incurred on Kessler matters in the amount of $1,868,179.85 and pre-award interest from February 13, 2015, through May 31, 2017, in the amount of $772,044.51, for a total interim award of $2,640,224.36. On September 14, 2017, Fraley received $1,299,990 from defendants, i.e., the amount that had been escrowed under the coverage action settlement to satisfy Fraley's lien (less a $10 wire transfer charge).

On January 23, 2018, the arbitrator issued a final award which added to the interim award $1,113,899.94 in attorney fees and costs incurred in the collection action and $52,490 in costs associated with arbitration. The final award also gave Kessler a $1,299,990 credit for the amount received by Fraley from the escrowed coverage settlement proceeds.

On May 8, 2018, Fraley petitioned the trial court to confirm the arbitration award, and on July 9, 2018, the court entered a judgment in favor of Fraley that confirmed the final award, and added to it additional prejudgment interest and attorney fees, for a total damage award against Kessler of $2,921,413.41. The judgment also granted Fraley declaratory relief, including

6

declarations that Fraley's attorney lien was valid and enforceable and applied to, among other matters, the proceeds from the coverage action settlement and the malpractice action settlement.

## III.    PROCEDURAL BACKGROUND

A.    *The Instant Action*

On January 22, 2020, Fraley filed his complaint against defendants, asserting four causes of action:  (1) conversion; (2) intentional interference with contract; (3) intentional interference with prospective economic advantage; and (4) aiding and abetting fraudulent transfers.  Each cause of action was based on the same five alleged acts by defendants:

"a.    enabling [Kessler] to enter into the [coverage action settlement] without regard to [Fraley's l]ien against the [coverage action s]ettlement [p]roceeds and without compensating [Fraley] for [his] services in violation of [his l]ien;

"b.    taking possession, custody, and control of the [coverage action s]ettlement [p]roceeds without regard to [Fraley's l]ien against [those p]roceeds and without compensating [Fraley] for [his] services in violation of [his l]ien;

"c.    distributing substantial portions of the [coverage action s]ettlement [p]roceeds to [Kessler] and to [defendants] without regard to [Fraley's l]ien against [those p]roceeds and without compensating [Fraley] for [his] services in violation of [his l]ien;

"d.    failing to hold or deliver to [Fraley] a sufficient amount from the [coverage s]ettlement [p]roceeds to discharge [Fraley's l]ien in full, which enabled [Kessler] and[/or defendants]

7

to use and/or further transfer the [coverage action s]ettlement [p]roceeds without compensating [Fraley] for [his] services in violation of [his l]ien; and/or

"e.    obtaining more favorable terms for the [coverage action s]ettlement, including, but not limited to, reducing the settlement amount in exchange for circumventing [Fraley's l]ien against the [coverage action s]ettlement [p]roceeds, all without [Fraley's] consent and contrary to [Fraley's l]ien against the [coverage action s]ettlement [p]roceeds."

B.    *Anti-SLAPP Motion*

On April 29, 2020, defendants filed a special motion to strike the entire complaint under section 425.16.  Defendants' notice of motion advised that "[t]his [m]otion is made on the ground, among others, that *the gravamen or principle thrust* of the [c]omplaint[] is premised entirely on [d]efendants' exercise of the 'right of petition or free speech' in connection with [the] settlement of a lawsuit and [the] distribution of the settlement funds to [Kessler]."  (Italics added.)

Defendants argued that the trial court must "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action" and "the principal thrust of each cause of action is that [defendants] deprived Fraley of the proceeds from the [c]overage [a]ction by settling [that action] and disbursing the settlement funds." Defendants listed the five acts by defendants that allegedly supported liability on each cause of action and concluded that those "activities all undisputedly all [arose] from protected activity.  Thus, . . . [d]efendants have satisfied their burden on prong one."

8

On the issue of whether Fraley could show a probability of prevailing on his claims, defendants argued, among other things, that the litigation privilege in Civil Code section 47, subdivision (b), barred each of Fraley's claims.

Fraley opposed the motion arguing, as relevant on appeal, that the gravamen of his claims against defendants was not their statements made during the coverage action settlement negotiations, but rather their separate conduct in disbursing the settlement funds after the coverage action was dismissed. Because that disbursement was independent conduct that was not protected activity under the anti-SLAPP statute, Fraley maintained that defendants had failed to carry their burden under the first prong of that statute. As to prong two, Fraley argued that he could establish a prima facie case for his causes of action and that the litigation privilege did not apply to the impairment of attorney liens.

C.    *Trial Court's Ruling*

On September 4, 2020, the trial court held a hearing on defendants' motion and took the matter under submission. On September 11, 2020, the court issued a final ruling granting the motion and finding that the protected activity—negotiation of the settlement agreement—was "at the heart of [Fraley's] claims." According to the court, the allegations concerning the disbursement of the settlement funds without reserving sufficient amounts to cover Fraley's lien "would not have been possible without the negotiation, drafting, and execution of the [coverage action] settlement agreement. Thus, the settlement agreement is not 'merely "incidental"' to the wrongful conduct. [Citation.] The

9

entry into, and the effectuation of, the settlement agreement form 'the fundamental factual basis for the claim[s].'" [Citation.]"

On Fraley's probability of prevailing on his claims, the trial court found, among other things, that Fraley's "claims based on [defendants'] negotiating, drafting, and executing the settlement agreement [were] protected by the litigation privilege." The court granted the special motion to strike the entire complaint.

Following the order striking the complaint, Fraley filed a November 9, 2020, notice of appeal from the trial court's order granting the special motion to strike and defendants' respective memoranda of costs.

On October 9, 2020, defendants[6] filed a motion for an award of attorney fees, and the trial court granted the motion, awarding defendants costs and $75,651.50 in attorney fees. On December 29, 2020, the court entered a judgment in favor of defendants on the orders granting the special motion to strike and awarding fees and costs. Fraley timely appealed from the judgment and we consolidated that appeal with his earlier appeal from the order striking the complaint.

## IV.   DISCUSSION

### A.    *The Anti-SLAPP Procedure*

"[The anti-SLAPP] statute authorizes a special motion to strike a claim "arising from any act . . . in furtherance of the [plaintiff's] right of petition or free speech under the United States Constitution or the California Constitution in connection

---

[6]    Defendants Beitchman & Zekian and David Beitchman did not file a fee motion.

with a public issue." (§ 425.16, subd. (b)(1).)' (*Wilson* [*v. Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 883–884.) [¶] Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' (*Park* [*v. Board of Trustees of California State University* (2017)] 2 Cal.5th [1057,] 1061.) Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' (*Ibid.*) If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) We review an order granting or denying an anti-SLAPP motion

11

de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

B.     *First-Prong*

Fraley contends that defendants failed to satisfy their first-prong burden to "specifically identify 'all allegations of protected activity, and the claims for relief supported by those allegations.'" (Quoting *Baral, supra*, 1 Cal.5th at p. 396.) Because defendants instead focused on the "gravamen or principal thrust of the [c]omplaint"—without assessing each allegation of actionable conduct in the context of the cause of action it supported—Fraley maintains they failed to demonstrate that each of his causes of action was predicated entirely on protected activity.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.]" (*Park, supra*, 2 Cal.5th at pp. 1062–1063.)

12

"Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.  [Citations.]  Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

Fraley's complaint presented causes of action based on five separate alleged wrongful acts and, as such, was subject to the first-prong procedures outlined in *Baral, supra*, 1 Cal.5th 376. To the extent Fraley contends that the order striking his complaint should be reversed because defendants failed *at the outset* to identify adequately the specific protected activity they sought to strike, we disagree.  Contrary to Fraley's assertion, defendants' motion identified the five separate acts alleged by Fraley in support of each of his causes of action.  Defendants also asserted that all of those actions—albeit only when viewed as part of one, unified transaction—were wrongful and constituted protected activity.

We therefore consider whether defendants met their first prong burden to demonstrate that each claim they sought to strike arose from one or more of the following five acts in furtherance of protected activity:  (1) enabling Kessler (presumably through negotiation and drafting) to settle the coverage action without regard to the lien; (2) taking possession of the settlement proceeds without paying off the lien; (3) disbursing the settlement proceeds (to themselves and Kessler) without paying off the lien; (4) failing to withhold sufficient funds from the Kessler disbursement to discharge the lien; and (5) obtaining for Kessler more favorable terms from Travelers, including Travelers' agreement to circumvent the lien

in exchange for her agreement to a reduction in the settlement amount.

We conclude that alleged acts one and five, enabling Kessler to consummate the settlement and assisting her in obtaining favorable terms, were in furtherance of protected activity. Each is based on defendants' conduct in either advising Kessler on the settlement or in negotiating, drafting, and executing the agreement. Such conduct is protected under section 425.16. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 ["negotiation and execution of [a release], . . . involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body' (§ 425.16, subd. (e)(2))"]; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 [cause of action based on law firm's communication of settlement offer "a matter connected with issues under consideration or review by a judicial body"].)

As to alleged act two, taking possession of the settlement funds, we note that the very nature of this act necessarily followed the negotiation and execution of the coverage action settlement agreement, which agreement described how Travelers would disburse the funds. Moreover, the complaint's description of how defendants came to possess such funds provided context for how defendants later chose to handle them. As such, alleged act two is the type of activity that is collateral and provides context to the allegations in the complaint and therefore does not support a claim that can be stricken under the anti-SLAPP statute. (*Baral, supra*, 1 Cal.5th at p. 396.)

Finally, as to alleged acts three and four—disbursing funds without either paying off Fraley's lien or withholding sufficient funds to discharge it—we conclude they are not acts in

14

furtherance of protected activity. Defendants' allegedly wrongful disbursement was not required under the payment terms of the settlement and, thus, was only tangentially related to a matter under consideration by a judicial body. Moreover, the coverage action litigation in which defendants represented Kessler was dismissed prior to defendants making the challenged disbursement to Kessler, thereby rendering the connection between that act and defendants' right of petition too attenuated to warrant protection under section 425.16. (See *Trilogy Plumbing, Inc. v. Navigators Specialty Ins. Co.* (2020) 50 Cal.App.5th 920, 925 [the fact that "conduct underlying [the plaintiff's] claims is *related* to pending litigation is insufficient to confer protected activity status under section 425.16, subdivision (e)(2);" conduct "must *arise* from the litigation to be protected"].)

In reaching our conclusion that the alleged acts of disbursement fall outside the protection of the anti-SLAPP statute, we acknowledge the arguably contrary holding in *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546 (*O&C Creditors*) on which defendants primarily rely. In that case, which was decided before the Supreme Court's recent decision in *Bonni, supra*, 11 Cal.5th at page 995, the court reviewed the mixed causes of action before it, using a "gravamen" or "principal thrust" approach. It concluded that because the plaintiff's claims were based on the negotiation and execution of a settlement, the separate allegations concerning the wrongful disbursement of settlement funds could not be "neatly cleaved" from the protected alleged acts relating to the settlement agreement. (*O&C Creditors, supra*, 42 Cal.App.5th at p. 580.) Such a "gravamen" or "principal thrust" approach, however, has

15

since been disapproved by our Supreme Court in *Bonni, supra*, 11 Cal.5th at page 1010.

Further, even if the court in *O&C Creditors* had not applied the "gravamen" or "principal thrust" approach, the facts of the instant case are distinguishable from those at issue there. The alleged acts of disbursement here were not required by the terms of the settlement agreement. Instead, the agreement provided that Travelers would pay the disputed funds to defendants, who made no commitment under the agreement as to how they would handle those funds once received (other than to assure Travelers that Kessler would protect Fraley's lien rights). Defendants therefore had independent discretion concerning the timing and amounts of any disbursements to Kessler. Indeed, under the terms of the settlement, defendants were free to withhold all or some portion of the funds in trust or to disburse them using a check or wire transfer made jointly payable to Kessler and Fraley. Their act of disbursing the funds to Kessler only, and without withholding any amount, was sufficiently independent of their conduct directly related to the coverage action to support a conclusion that the disbursement was not in furtherance of the right of petition.

Because defendants did not meet their burden of demonstrating that the second, third, and fourth alleged acts were in furtherance of protected activity, claims based upon those acts could not be stricken from the complaint. The order striking the entire complaint must therefore be reversed.

16

C.    *Prong Two*

In considering the second prong of the anti-SLAPP analysis, we must determine whether claims based on the first and fifth alleged acts, those acts which we have concluded were undertaken in furtherance of protected activity, are nevertheless barred by the litigation privilege.

The litigation privilege set forth at Civil Code section 47, subdivision (b) "applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' [Citation.] The privilege is 'absolute in nature, applying "to *all* publications, irrespective of their maliciousness."' [Citation.] "'Any doubt about whether the privilege applies is resolved in favor of applying it.""' (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld* (2017) 18 Cal.App.5th 95, 116.)

Although Fraley argues that the litigation privilege does not apply to the separate, noncommunicative conduct of disbursing the settlement funds, he does not address whether the privilege bars the conduct under review here—enabling Kessler, through the drafting and negotiation of the settlement agreement, to settle around Fraley's lien and obtaining on her behalf, more favorable terms, including Travelers' agreement to circumvent the lien. We conclude these alleged acts were communicative in nature, undertaken to achieve the legitimate objects of the coverage action, and sufficiently connected or logically related to that action. They are therefore protected under the litigation privilege and should be stricken from each of the causes of action as an independent bases for liability.

17

D.    *Attorney Fee and Cost Awards*

The trial court's awards of attorney fees and costs were based on the order striking the entire complaint.  Because we are reversing that order and remanding the matter with directions, we also must reverse the attorney fee and cost awards and remand those matters to the court for further proceedings consistent with this opinion.  We express no opinion on whether attorney fees should be awarded and, if so, in what amount.

## V.    DISPOSITION

The order striking the complaint is reversed and the matter is remanded with directions to:  (1) enter a new order on the anti-SLAPP motion striking from the causes of action only the allegations of protected activity identified above, in part IV. C. concerning the litigation privilege; and (2) conduct further proceedings on defendants' requests for attorney fees and costs in light of the new order on the special motion to strike.  No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



RUBIN, P. J.



MOOR, J.

19